### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNIVERSITY SPORTS PUBLICATIONS CO., INC.,

                        Plaintiff,

      vs.

PLAYMAKERS MEDIA CO.; TERRY COLUMBUS; SHANE PITTA and DARNELL GENTLES

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**09 CV 8206**

Index No.

RECEIVED
SEP 2 5 2009
U.S.D.C. S.D. N.Y.
CASHIERS

### COMPLAINT

Plaintiff, University Sports Publications Co., Inc., ("USP" or the "Company"), by its attorneys, Dewey & LeBoeuf LLP, for its Complaint herein against defendants Playmakers Media Co. ("Playmakers"), Terry Columbus, Shane Pitta and Darnell Gentles (collectively, "Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action to recover for: (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) conspiracy; (3) misappropriation of trade secrets; (4) unfair competition; (5) breach of fiduciary duty; (6) aiding and abetting a breach of fiduciary duty; and (7) tortious interference with contractual relations, in connection with the unauthorized access of its computerized database for use by one of its competitors, Defendant Playmaker.

2.      Starting in or around January, 2008, Defendant Shane Pitta, a former USP employee who is now the Vice President of Advertising Sales at Playmakers, conspired with Defendant Darnell Gentles, a USP employee up until his unlawful activities were discovered, to

arrange for Pitta's access to a computerized database containing USP's historical sales information, an incalculably valuable set of information that took years to create.

3.    Pitta distributed this proprietary information to other Playmakers employees, with the full knowledge of Playmakers' President, Defendant Terry Columbus, in order to target USP's customer base for solicitation of advertising sales, a business in which both USP and Playmakers directly compete.

4.    As a result of the Defendants' actions, USP has been forced to expend thousands of dollars to investigate the security breach, conduct a full audit of its computer security systems, and implement new measures to prevent further unauthorized computer access.  In addition, USP has been harmed by a loss in business as a direct result of Playmakers' solicitation of USP customers using information stolen from USP's computerized database.

## THE PARTIES

5.    Plaintiff USP is incorporated in New York and has its principal executive office located at 570 Elmont Road, Elmont, New York.  USP is the nation's leading publisher of collegiate sports souvenir magazines and yearbooks, reaching more than 500 colleges and universities.  USP also provides similar services for professional sporting teams and events through its wholly owned subsidiary, Professional Sports Publications ("PSP").  PSP has offices located at 570 Elmont Road, Elmont, New York and 519 Eighth Avenue, New York City, New York.

6.    Defendant Playmakers is incorporated in New York and has its principal executive office located at 500 Mamaroneck Avenue, Suite 320, Harrison, New York. Playmakers sells advertising space in specialty publications; in particular, publications relating to professional sporting teams.

7.     Defendant Terry Columbus resides at 7 Chesley Road, White Plains, New York. She is the President of Playmakers. Columbus previously served as the Vice President and Director of Sales for PSP from approximately 1992 to 2005.

8.     Defendant Shane Pitta resides at 58 Florence Place, Staten Island, New York. Pitta is the Vice President for Advertising Sales at Playmakers. Prior to joining Playmakers, Pitta was employed as an advertising salesperson at USP from approximately 1996 to 2006.

9.     Defendant Darnell Gentles resides at 6923 136th Street, Flushing, New York. Gentles was an employee of USP who worked in the information technology department until July, 2009, when his illegal conduct was discovered.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This suit is predicated on a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

11.     This Court has supplemental jurisdiction over USP's state law claims pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and because the events giving rise to this Complaint occurred in the Southern District of New York and defendants Playmakers and Columbus reside in the Southern District of New York.

## FACTUAL ALLEGATIONS

### I.     USP'S BUSINESS MODEL

13.     USP is in the advertising sales business. USP contracts with colleges and universities across the country to solicit advertising sales in sports souvenir magazines and yearbooks. Through its wholly owned subsidiary, PSP, USP also sells advertising space in publications relating to professional sporting events.

14.     To sell the advertising space, USP contacts local and national businesses to inquire whether they would like to purchase an ad.  USP must speak directly to the individual with authority to purchase advertising at each company in order to complete a sale.

15.     Over the years, USP has built up an extensive computer database of customer leads and historical sales data from its collegiate and professional sports advertising sales, including the company name, the name and contact information for the person at the company authorized to place advertising sales, the name of the publication in which the company purchased advertising, the date of purchase, and the cost and size of the advertisement sold.

16.     The computerized database contains information that is not readily available to the public and was compiled through countless calls, numbering hundreds of employee man-hours, made by USP employees to companies.  Much of the information contained within the database is not known outside of USP and could not possibly be duplicated by others.

17.     The database is contained in electronic form on several centralized computer servers, which are maintained for USP by Databasaurus L.L.C. ("Databasaurus"), an information technology and network consulting company.  Databasaurus provides a full range of information technology services to USP, including the maintenance of all of the computer servers and networks utilized by USP.

18.     The database and other information contained on USP's computer servers is critical to USP's business and is protected by information technology security measures.

19.     USP employees are provided with software installed on their computers which enables them to access the database.  The software allows employees to connect to the database and access the stored sales information from their computers.

20.     The computer database is invaluable to USP's business for several reasons.  First, it aggregates the contact information for the individuals at each company with authority to purchase advertising.  This allows USP to access the responsible individual directly, rather than talking to people who are not allowed to place purchases, thereby allowing USP to sell ads more efficiently.

21.     Second, the computer database allows USP to solicit repeat sales by focusing its marketing on likely advertisement purchasers.  Because the database contains the names of past purchasers, a USP salesperson knows that a company listed in the database is predisposed to placing advertisements in sports-related publications.

22.     Third, the computer database also allowed USP to cultivate long-standing business relationships with companies, which increases the likelihood that each company would provide word-of-mouth referrals and help USP to solicit additional sales.

23.     Fourth, the computer database gives USP a competitive advantage in negotiating advertisement prices.  By accessing the database, a USP salesperson knows how much a company paid for advertising in the past, which allows the salesperson to negotiate a price more effectively by offering an advertisement rate at, or just below, the rate a buyer is willing to pay.  By enabling USP to determine the maximum price a buyer is willing to pay for advertising, the database allows USP to maximize its advertising profits.

## II.     COLUMBUS AND PITTA'S KNOWLEDGE OF USP'S COMPUTERIZED DATABASE

24.     Terry Columbus was employed at PSP Sports Marketing from approximately 1992 to 2005 as a Vice President and Director of Sales.  Through the course of her employment, Columbus was aware of USP's computerized database and knew it contained invaluable sales data and customer contact information.

25.     Shane Pitta was employed at USP for approximately a decade as an advertising salesperson.  Through the course of his employment, Pitta was aware of the computer database and knew of its contents.  While a salesperson at USP, Pitta used the database.

26.     In or around 2005, Columbus and PSP discontinued their employment relationship.  Accordingly, Columbus was no longer authorized to access USP's computerized database or use any information contained in the database.

27.     In or around 2006, Pitta and USP discontinued their employment relationship.  Accordingly, Pitta was no longer authorized to access the computer database or use any information contained in the database.

## III.    PITTA UNLAWFULLY ACCESSES USP'S PROPRIETARY COMPUTERIZED DATABASE

28.     Starting in or about January of 2008, Pitta and Columbus, on behalf of Playmakers, entered into an unlawful conspiracy with Gentles, designed to deprive USP of its proprietary business information and obtain an improper business advantage over USP, by illicitly accessing the Company's secure computer network.

29.     While Pitta was employed at Playmakers, he accessed USP's database, which he no longer was authorized to use, on numerous occasions.  Pitta was unlawfully granted access to USP's database by Darnell Gentles, who until recently was employed at USP in the information technology department.

30.     Although Gentles was authorized to use and access USP's computerized database in the course of his employment in USP's information technology department, he exceeded his authorization by providing information to Pitta.

6

31.     Gentles helped to grant Pitta access to USP's computerized database, thereby providing him with information concerning USP's historical sales from 1999 through 2007. Pitta accessed the information through an icon located on the desktop screen of his laptop computer.

32.     The laptop computer Pitta used to access USP's computerized database was his personal laptop. Playmakers did not issue him the laptop; instead, Pitta brought his personal computer to and from work to use for work purposes.

33.     Pitta disseminated information from USP's computerized database on several occasions via email from his Playmakers email account to other Playmakers employees at their Playmakers email account addresses. Pitta provided this information to fellow employees as sales lead data, for use in soliciting advertising on behalf of Playmakers. He distributed the information in the form of excel spreadsheets containing the name of the company to be solicited, the name and contact information of the person at the company authorized to place advertising sales, and the historical sales data for the company.

34.     Pitta and Gentles discussed Pitta's access to USP's computerized database in a series of telephone calls, sometimes while Pitta was in earshot of other Playmakers employees.

35.     Pitta openly acknowledged to other Playmakers employees that he received access to USP's computerized database of historical sales data from Gentles.

36.     Columbus was aware that Pitta had access to confidential and proprietary information contained in USP's computerized database and had distributed some of USP's sales data to other Playmakers employees for the express purpose of selling advertising on behalf of Playmakers. However, Columbus took no steps to stop Pitta from accessing USP's database or from profiting from the misappropriated information.

37.     In approximately March of 2009, Pitta and Gentles had a telephone conversation in which Pitta asked Gentles to provide him with additional USP sales data.  However, Gentles could no longer grant him access because USP had installed additional safeguards which limited Gentles' access to USP sales data.

## IV.     USP REMEDIES THE INFORMATION LEAK AT GREAT EXPENSE

38.     USP discovered that the safety and security of its electronic data and computer system was breached.

39.     In response to Pitta and Gentles' unauthorized access to USP's computerized database, USP was forced to commission a full technical audit by an outside vendor of its information technology security systems to determine whether any damage had occurred, identify potential security weaknesses, and determine how to strengthen its security systems to prevent future information leaks.  The cost of the technical audit is expected to be approximately $1,500.

40.     On behalf of USP, Databasaurus employees conducted an investigation of the computer systems utilized by USP in order to determine whether they had been damaged, ensure that they were in the same operating condition as they were prior to the breach, determine how the unauthorized access could have occurred, and evaluate potential remedial security measures to prevent further unauthorized access.  The approximate cost to date of this response by Databasaurus is $4,000.  As a result of the consulting relationship between USP and Databasaurus, this cost will be borne entirely by USP.

41.     In addition to these initial costs, USP is in the process of implementing remedial computer security measures in response to the security audit and computer systems investigation.

These measures are designed to prevent future unauthorized access of USP's computerized database by defendants Pitta and Gentles.

42.     The total cost of these remedial security measures is expected to be approximately $130,000. This is based on the pricing of the products USP intends to utilize and an estimate by Databasaurus of the corresponding implementation costs.

43.     As detailed above, the reasonable cost to USP of responding to the unauthorized computer access, including the information technology audit, investigation of the unauthorized access, computer systems damage assessment, and ongoing implementation of remedial security measures has already exceeded $5,000 and is expected to exceed $130,000.

### COUNT I
**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

44.     Plaintiff repeats and realleges every allegation contained in the preceding paragraphs as if set forth herein in full.

45.     USP's computerized database is, and at all relevant times has been, used in interstate commerce and communication and is thus a "protected computer" under the CFAA.

46.     While employed at Playmakers, Pitta intentionally, knowingly, and without authorization, accessed USP's proprietary computerized database in order to obtain USP's valuable sales history information in violation of 18 U.S.C. § 1030(a)(2)(C).

47.     When Pitta accessed USP's computer database, he intended to use the valuable information contained therein to defraud USP, and to use it for Playmakers' advantage and profit, and by so doing obtained information the value of which exceeds $5,000 in violation of 18 U.S.C. § 1030(a)(4).

48.     While employed at USP, Gentles intentionally accessed USP's computer database without authority, or in excess of his authority, to obtain USP's sales history information in violation of 18 U.S.C. § 1030(a)(2)(C).

49.     When Gentles accessed USP's computer database, he intended to provide the information to Pitta for his use in direct competition with USP.

50.     Defendants Pitta and Gentles' unauthorized access of USP's computerized database caused losses and damage to USP in an amount to be determined at trial, and that exceeds $5,000, in violation of 18 U.S.C. 1030(a)(5)(C).

### COUNT II
### (Conspiracy to Violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

51.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

52.     USP's computerized database is, and at all relevant times has been, used in interstate commerce and communication and is thus a "protected computer" under the CFAA.

53.     Defendants Pitta and Gentles agreed to access USP's computerized database, without authority or in excess of their authority.

54.     Pursuant to his agreement with Defendant Gentles, Pitta intentionally, knowingly, and without authorization accessed USP's proprietary computerized database to obtain USP's valuable sales history information in violation of 18 U.S.C. § 1030(b).

55.     Pursuant to his agreement with Defendant Pitta, Gentles intentionally accessed USP's computer database without authority or in excess of his authority to obtain USP's sales history information in violation of 18 U.S.C. § 1030(b).

56.     Defendant Gentles accessed the database with the intent of providing the information contained within to Pitta for his use in direct competition with USP.

57.     Defendants Pitta, Columbus and Playmakers agreed to use the confidential and proprietary information stolen from USP's computerized database to compete directly with USP.

58.     Pursuant to their agreement, Defendants Pitta, Columbus, and Playmakers utilized the confidential and proprietary information stolen from USP's computerized database, the value of which exceeds $5,000 to compete directly with USP in violation of 18 U.S.C. § 1030(b).

59.     Defendants Pitta, Gentles, Columbus and Playmakers' conspiracy, caused losses and damage to USP in an amount to be determined at trial, and that exceeds $5,000, in violation of 18 U.S.C. § 1030(b).

## COUNT III
### (Misappropriation of Trade Secrets)

60.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

61.     The information contained in USP's computerized database constitutes a trade secret within the possession of USP. The information is not widely known outside of USP, is restricted internally to appropriate employees, and is vigorously protected by USP. The information is invaluable to USP and its competitors and was acquired at great expense and effort by USP. Substantial portions of the information, including the historical pricing information, could not possibly be duplicated by others. The information within the database that could be reproduced by another company could only be compiled at great expense, via thousands of hours of research and trial and error sales calls.

62.     As explained in detail in Section I of the Factual Allegations, the information contained in USP's database provides it with a considerable advantage over its competitors.

63.     Defendants Pitta, Columbus and Playmakers discovered USP's confidential and proprietary information through the improper arrangement between Defendant Gentles and Pitta and have been using the information contained in the database to compete directly with USP.

64.     Defendant Gentles used USP's confidential and proprietary information in breach of his fiduciary duty of good faith and loyalty to USP.

65.     As a result of Defendants Pitta, Gentles, Columbus and Playmakers' misappropriation of the information contained within USP's computerized database, USP was damaged in amount to be determined at trial.

**COUNT IV**
**(Unfair Competition)**

66.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

67.     USP's computerized database contains proprietary information and trade secrets. This information provides USP with a valuable commercial advantage over its competitors.

68.     Defendants Pitta, Columbus and Playmakers misappropriated, in bad faith, USP's valuable commercial advantage by taking and exploiting the proprietary information and trade secrets contained in USP's database.

69.     Defendants Pitta, Columbus and Playmakers acted in bad faith by taking and/or using the information contained in USP's computerized database in order to compete with USP.

70.     Dependants Pitta, Columbus and Playmakers exploited USP's proprietary information and trade secrets by using the information contained in USP's database in order to solicit USP's clients.

71.     By using the information contained within USP's database to compete against USP, defendants Pitta, Columbus and Playmakers misappropriated a valuable commercial advantage belonging to USP.

72.     As a result of Defendants Pitta, Columbus and Playmakers' unfair competition, USP was damaged in amount to be determined at trial.

## COUNT V
### (Breach of Fiduciary Duty)

73.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

74.     Defendant Gentles, as a USP employee, owed USP a fiduciary duty to exercise good faith and loyalty in the performance of his duties.

75.     Gentles breached that duty by exceeding his authority to access USP company information technology and by leaking confidential and proprietary information to a competitor.

76.     Gentles leaked the information with the knowledge that it would be used to actively divert business away from USP, to whom he owed his fiduciary duty. By doing so, Gentles acted in pursuit of his own self-interest and in direct conflict with the interests of USP.

77.     As a result of Defendant Gentles' breach of fiduciary duty, USP was damaged in amount to be determined at trial.

## COUNT VI
### (Aiding and Abetting a Breach of Fiduciary Duty)

78.      Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

79.      As a USP employee, Defendant Gentles owed USP a fiduciary duty to exercise good faith and loyalty in the performance of his duties.

80.      Defendant Gentles breached that duty by exceeding his authority to access USP company information technology and by leaking confidential and proprietary information to a competitor.

81.      Defendant Gentles provided defendant Pitta with USP's confidential and proprietary information with the knowledge that it would be used to divert business away from USP, to whom Gentles owed his fiduciary duty.

82.      Defendant Pitta assisted Gentles in breaching his duty by conspiring with him to access USP's computerized database with the express purpose of using the information unlawfully gained to directly compete with USP.

83.      Defendants Columbus and Playmakers assisted Gentles in breaching his duty by accepting and using for their benefit the confidential information gleaned from the unauthorized access to USP's computerized database.

84.      Defendants Pitta, Columbus and Playmakers assisted Gentles in breaching his duty by concealing the theft of USP's information from USP.

85.      As a result of Defendants Pitta, Gentles, Columbus and Playmakers' aiding and abetting, USP was damaged in amount to be determined at trial.

## COUNT VII
### (Tortious Interference with Contractual Relations)

86.     Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

87.     As recorded in its computerized database, USP had valid sales contracts with a large number of customers who sought to place ads in various sports souvenir magazines and yearbooks.  USP had built up long-standing relationships with many of the companies listed in the database.

88.     Defendants Pitta, Playmakers, Columbus and Gentles all were aware that USP had contracts with customers, as listed in the database.

89.     Defendants Pitta, Columbus and Playmakers intentionally solicited USP's customer base in an attempt to convince them not to sign contracts with USP and instead to take their business to Playmakers.

90.     USP customers have breached contracts with USP as a result of the actions of Defendants Pitta, Columbus and Playmakers.

91.     As a result of Defendants Pitta, Columbus and Playmakers' tortious interference with contractual relations, USP was damaged in amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, USP prays for judgment as follows:

1.      For compensatory and punitive damages in an amount to be proven at

trial;

2.      For disgorgement of Playmakers' ill-gotten profits;

3.      For a permanent injunction enjoining Defendants Pitta, Playmakers and

Columbus from using information contained in USP's computerized

database; and

4.      For such other and further relief as the Court deems appropriate, including

interest, costs, disbursements and attorney's fees incurred herein, as

permitted by law.


Respectfully submitted,


Dated: September 25, 2009                  DEWEY & LEBOEUF LLP

                                           By:  _____
                                                Christopher J. Clark
                                                Kevin C. Wallace

                                                1301 Avenue of the Americas
                                                New York, NY  10019-5389
                                                Tel. (212) 259-8000
                                                Fax (212) 259-6333

                                                Geoffrey H. Coll
                                                1101 New York Avenue, N.W., Suite 1100
                                                Washington, D.C. 20005
                                                Tel. (202) 346-8146
                                                Fax (202) 956-3342

                                                Attorneys for Plaintiff